Let's see, this is case number 4-13-0441, People's State of Illinois v. Jeffrey Davison. Attorney Andrews is here on behalf of the appellant. Attorney Brooks is here on behalf of the state. Are you ready to proceed, Mr. Andrews? Mr. Brooks I'm here to represent Mr. Davison. I don't intend to go through the entire argument. I thought I'd cover two obvious issues in this case and then answer questions if there were any. The obvious issue here is a third stage post-conviction ruling and the standard of review for that is rather daunting. And then also, since it's alleging ineffective assistance of counsel, we'd have to deal with whether or not that was a reasonable strategy. As far as the standard of review for a third stage post-conviction dismissal, it's only reversed for manifest error. Manifest error is clearly evident error, plain error, indisputable error. The opposite conclusion is clearly evident. Now, the post-conviction court ruled that there was nothing disclosed by way of pre-trial conversations which would reasonably lead counsel to believe that there existed a basis to assert the defense of compulsion because any claimed threats from the co-defendants were not made until after the crimes charged had been convicted. So the court, in essence, ruled that counsel went into the trial thinking that threats had only been made after the trial and had concocted this strategy based on that. However, that ruling is manifestly erroneous because it is contradicted by the record of the post-conviction proceeding. For example, counsel testified that he knew that, and counsel actually presented this evidence, that Mr. Davison had told his roommate on the telephone that he couldn't leave the car that was occupied by the Barry brothers and that he told his roommate, you know, that I'll ask them if I can leave, that he said that he had to hang up because they're acting like maniacs. Counsel also, before the trial, knew that the car locks were defective and that Mr. Davison could not get out of the back seat. And so that was evidence before the trial that he was not free to leave. The Barrys could let him out. So counsel knew that before the trial. Counsel also knew before trial, and he testified about this, that when Mr. Davison had his first encounter with the decedent, when he threw the bat at him, he tried to return to the car and counsel testified that he knew that the Barrys had told Mr. Davison that it isn't good enough and don't come back. So the record clearly shows that counsel did in fact know evidence of threats and evidence supporting a compulsion defense before the trial. Therefore, the ruling is manifestly erroneous. Secondly, the ruling is simply incorrect because it entirely fails to deal with the fact that more evidence of threats came up during the trial. The one where Mr. Davison testified that they told him he had to go after Mr. Norwood initially or they would mess him up and he wouldn't be going home. The trial court simply ignored the evidence of threats that occurred at the trial. And this is like the Sims case where the evidence of compulsion defense counsel learned about it over a lunch break during the trial. And the appellate court held he was ineffective for failing to act on that. Were they right? I agree. I say they're right. Well, is their decision persuasive and reasonable in the context and why should we buy it? I don't think there's any law that says that there has to be a pretrial notice of an affirmative defense. It seems to me that there are occasions when it comes up during the trial and that's pretty much the basis of the rule that if the state's evidence doesn't present the defense, then the defendant has to present some slight evidence. Didn't Manningly testify at the stage three hearing that at no time before trial the defendant stated any facts to him that would have supported defense of compulsion to this case? Yeah, he did say that. But again, those statements that I mentioned... So, I mean, isn't this something left to the judgment and discretion of the trial counsel to evaluate this stuff to see whether or not this is a defense which can be meaningfully brought? Well, I think he has to make that evaluation based on what happens in the trial court as well as in the pretrial. He needs to react and that's especially true in this case where his strategy was in the main eviscerated when the state dismissed the murder charge. Hadn't the defendant made statements in this case? To the police? Yes. Yes, he had. Okay, so how is it unreasonable for a defense attorney to think, you know, gee, I'm just hearing now about the new stuff for the first time that might aid a compulsion defense and I'm going to raise it through... It would have to be through the defendant's testimony if he testifies at trial. By the way, did the defendant testify at his trial? No. Okay. I'm going to raise this through his testimony at trial, opening the door for the state's attorney to rip the defendant up by essentially asking, well, Mr. Defendant, all of this stuff that you're now telling us about that you felt compelled and threatened, blah, blah, blah, you didn't say that in your statement to the police within hours or days or whatever it was of when this occurred, did you? Well, counsel did exactly that. He elicited all this testimony. The state's attorney, in fact, did say, you didn't say any of that to the police. And counsel then forewent the only chance he had to get any benefit out of that by submitting a compulsion instruction. Well, maybe, well, what was his argument at trial? His argument at trial initially was self-defense, and then that, of course, went out the window. Then his only argument after that was, let me say this, the theory that he claimed, his alternative theory that he claimed, was that by the time Mr. Davison stabbed Mr. Norwood, he was acting alone. He was no longer in a mock. But the defense of compulsion is not inconsistent with what I would call the acting alone. Well, that's true if you're sitting in a law school classroom asking about this matter in the context of what's theoretically possible. But the standard for a defense attorney is not what's theoretically possible, but what might work. And how can you say of the circumstances that this is something which no reasonable defense attorney, knowing what he knew here, could have rejected? What I'm going on is based on counsel's own explanation of the acting alone defense, which he described as saying that when, at the time that Mr. Davison encountered Mr. Norwood, he was fleeing the Duberys, and that's why he was alone. That's completely compatible with the compulsion defense, that he was afraid of the Duberys and was fleeing them, and he was cut off. So there's no inconsistency at all. There's no reason not to do both. I mean, unless he missed it. And I understand trials are confusing and go off script, as counsel said. But you know, you have some obligation to present a defense for your client, especially where the one that you opted for has been destroyed by the state's ability to dismiss these murder charges. So again, let's see if I can get back. The other problem with counsel's strategy is that it was based on a misunderstanding. I mean, counsel testified and picked up on this testimony that Mr. Davison said, specifically the statement that when we drove up, we were all in the car, and the Duberys told me that I had to go out and get Norwood or they'd mess me up and I wouldn't go home. Now, counsel understood that, but counsel thought that Mr. Davison had misunderstood his question. Counsel simply assumed that that threat had been made after the trial. Now, you've got a reasonable duty to investigate. So, I mean, you know, again, you're not supposed to second-guess counsel, but second-guessing counsel is inevitable in one of these claims. And, you know, he should have asked Mr. Davison, am I right in believing that, you know, what you just said, that he's, you know. Did Davison testify at the third state hearing? No, he didn't. The defense attorney decided he'd stand on the record. Well, Mattingly testified, didn't he? Mattingly testified on behalf of the state. Did Davison explain what he said and why in his conversations with the defense counsel? Did Mr. Davison? No, he didn't testify at the post-conviction hearing, so he couldn't. But, you know, you have a duty to investigate. So, if there is this misunderstanding where it's evident that he says, I'm being threatened at this time, and counsel's surprised by that and thinks it might mean something else, then, you know, counsel is obligated to, you know, what they would say in another context, investigate. And he should have said, after Mr. Davison's testimony, is that, in fact, what happened? Were you threatened before you had to get out of the car? And if you was, then you present the compulsion defense. You know, not to go over too much of the ground we already covered, but, you know, the compulsion defense was compatible with the self-defense claim. You know, they both relied on the fact that he's forced into this situation and had to stab Mr. Norwood when he was attacked. It was compatible with counsel's other strategy of arguing that these threats caused Mr. Davison to lie to the police in his statement. Because, whether those threats were made during the crime or after the crime, he's afraid of the debris and he doesn't want to implicate them, so that's why he lied to the police. And the other point I was going to make, that it was even compatible with the acting alone defense, but we've already discussed that. So, there was more than slight evidence here to support a compulsion defense. The PC Court's ruling was manifestly erroneous. Trial counsel didn't have a reasonable strategy because it was based partly on the failure to clear up the confusion that he had. And so, I would ask, you know, unless there are other questions on other subjects of this issue, I would ask the court to reverse the PC ruling and grant Mr. Davison a new trial. Thank you. Thank you, Mr. Andrews. Ms. Brooks? Alice and Kate Brooks, on behalf of the people, may I please report to counsel? The standard review is daunting for the defendant because the manifest error is something that's difficult to establish. Here, also, the defendant states that there's slight evidence of compulsion in the record. Well, given the defendant's testimony about him being threatened, that does not meet the standard of slight evidence because of the various issues with compulsion defense. And even if that were the case, the defendant's burden is much more substantial at this stage because he has to show that there was ineffective assistance of counsel, which requires showing a strength of prejudice, which is the reasonable probability that he would have been acquitted had these instructions been given. So it's not just simply whether he would have been entitled to the instruction and that he should have requested the instruction, but also that there's a reasonable probability that he would have been acquitted had those instructions actually been given. So that's much more substantial than just simply saying that there's a slight evidence and therefore he should have been entitled to them. But first, going back to the issue of the reasonableness of whether Magdalene's representation was objectively reasonable and efficient, a great effort should be given to trial strategy of the defense attorney at trial, and this court would have to reconstruct circumstances of the decision by Magdalene not to request the compulsion instructions under the context of what happened at the time, not in hindsight based on what was alleged at the post-eviction hearing. At the time, the trial court was correct, the post-eviction hearing court was correct in finding that there was nothing disclosed to Magdalene before trial that would suggest that the compulsion defense, and what the defendant relies on here are elements that, because of defective car locks, that he couldn't leave the car while he was driving without looking for more with the victim, and also he was told not to come back and that showing that that wasn't good enough. However, absent from those little pieces of facts that Magdalene would have known before trial is any element of an impending threat of great bodily harm or death, which is necessary in the Durasco case, doing what you're told is not compulsion. You have to be told what to do and have an impending threat of great bodily harm or death attached to that instruction. So therefore, there was no comment, no knowledge by Magdalene before trial that what the defendant said was that he was threatened after the crime, was already committed, and therefore the change happened during the trial testimony, which Magdalene then reasonably misinterpreted what the defendant was saying and meaning, not as a compulsion defense, but that he specifically switched up the timeline of when the threat was made. So therefore, the conduct of Magdalene during trial was in fact reasonable. He was not required under those circumstances to essentially throw out a prepared defense, a defense he had investigated and prepared for trial in order to latch on to just a clean remark that maybe was just a result of a misunderstanding. What about Mr. Andrews' point that the state fundamentally changed what the defense counsel was planning on doing by dismissing some counts? Well, there's some problems with that argument. The first is that they didn't add the charge. I believe that they just simply dismissed counts so that if self-defense is not a defense of felony murder predicated on mob action, it wasn't going to be a defense of whether or not the other crimes or counts were going to be presented to the jury or whether they were going to be held at cross. So the defense was still going to be a defense to that felony murder charge. The self-defense wasn't good enough for that charge. So essentially, the fact that he lost the self-defense defense to the intentional and knowing murder counts, but he didn't need that defense anymore because those counts were dismissed. He didn't actually have to defend against those counts once they were dismissed. But he still, and at all times, needed a separate and sufficient defense to present against felony murder predicated on mob action. You heard Mr. Andrews' argument that the defense that was presented was pretty lame. Is he right? I'm sorry? That the defense presented at trial was pretty lame. Essentially, that's lame, bad, not well-grounded, etc. Of course, he has to take what he can get. But nonetheless, what's your response to Mr. Andrews' claim? Well, the defense was not an exceptionally good one in the sense that there was overwhelming evidence of guilt and there was nothing really the defendant's defense could do in light of the defendant's confession at least to being involved in the mob action. So therefore, there was really no great defense to present. But however, what matteringly shows was in fact the best defense. Not necessarily a good defense, but the best defense available under the circumstances, faced with overwhelming evidence of guilt. And that best defense was the mob action element of the predicate felony for felony murder. An element of mob action was that there had to be people acting together. So therefore, if he could show and convince the jury that there was a reasonable doubt as to whether the defendant was acting together or whether he was not accountable for the various acting together. So if he could do that, then he could show that there was a reasonable doubt as to the felony murder charge. Therefore, the predicate felony would lead to an acquittal for felony murder. So in essence, there was still a viable defense that he went with. And once the self-defense was gone, there was always self-defense plus acting singly or acting alone. And I guess the statement to emphasize this is that the defense claim here is that there is no inconsistency between the defense that Mattingly chose, which is the defendant acting alone, versus compulsion. What does compulsion mean? It means the defendant was compelled to commit the crime. It means the crime he was charged with and the acts he was charged with was acting together with the demerit. So essentially, the defendant wants to say that there's no inconsistency between the defendant acting alone and the defendant being compelled to act together with the demerit. So it really is just self-evident there is an inconsistency between those two defenses. And when there's an inconsistency between defenses, it's a situation where the defense attorney reasonably selects one of those inconsistent defenses and decides that that's the one that was already prepared and that's the one that all those efforts were going towards throughout the trial and before trial, rather than latch on to just a fleeting remark that may have been misunderstood that came up during the defendant's trial testimony. Well, you also heard Mr. Andrews respond in response to one of my questions, that given what had happened in this case, it wouldn't have hurt for the defense counsel to have added the compulsion defense to his arguments and sought instruction from the court because any detriment from doing so was already there. As you heard, the state's attorney was able to bring out inconsistencies or at least omissions by the defendant in his statement to the police. What about that? Well, he's already been shown to have failed to bring this out, so why not argue compulsion means it'd just be more of the same? ...instruction, which is argue that forcefully in disregard of the defendant's argument that the defendant acted stingly and then start putting all their eggs in the basket of well, he was compelled to act together. If they just simply presented the offer of instruction and if he were entitled to it and the trial court issued that instruction, then somehow the defense didn't even argue it during the closing argument. I'm not sure exactly how that would have gone, but it should be up to the trial counsel to reasonably look at this in selecting instructions, and Madden, when he recently determined that there were two opportunities for the defendant to get away from the two barriers, he was compelling him allegedly. So even in hindsight, he thought there was no good compulsion defense because it would have been barred by the opportunities for him to get away. There are also the fact that the state does rely on the element of that there has to be an absence of negligence, and I understand the defense position requires that somehow not an appropriate aspect of the compulsion defense because this is probably important from the necessity defense in error by certain appellate court opinions. The state's position is that this is also a component of the compulsion defense and the appellate court decisions are correct in requiring the defendant to not have any negligence at all in occasioning the compulsion because it gets into a situation where the defendant would somehow, in situations like this, be allowed to sort of latch onto a group that's looking out to go and attack someone, and at the last minute decide, oh, I don't think I really want to do this after providing the car to the other offenders, and then simply want to sort of withdraw. And then say, no, you can't withdraw because you're in for one, you're in for all, or you can't get out, you're here for me, and you got me here again. This is one of the Sims case. The defense here, I mean, essentially, if the jury believes that he provided the car with the intent for them, the jurors, to go out and find and attack Norwood, and they did that, and they committed mild action, and Norwood died, he is guilty of felony murder by accountability, even if he didn't even get in the car, or if he was in the car and never left the car, and threw a bat or a staff at Norwood or anything. Was there evidence, I'm trying to remember if Mr. Andrews made the argument, was there evidence of compulsion earlier in the proceedings, so that, assuming you're right in your characterization, there might have been evidence of compulsion before they let them use the car? Compulsion before letting them use the car. I don't believe there was any compulsion, because, essentially, the criminal enterprise starts once Patrick DeBerry, who's with Bunning, who's one of the prosecution witnesses, the friends, and they all live together, and they receive a call from the other two DeBerry's that passed the court about this altercation they had with Norwood. So then they drive over to pass the court, and they meet up, the other two DeBerry's get in the car, and then they discuss wanting to go out and get Norwood. So at that point, a criminal enterprise has been formed. So what happens is then they drive over back to the defendant's residence, the defendant goes to his own house, and then before he gets in, he comes back out, gets into his car, which is now being driven by one of the other DeBerry's. So, essentially, he had the opportunity to withdraw from this criminal enterprise, but he was inside his own house. And this is even an additional opportunity to withdraw that Madeline didn't even recognize. So that's another reason why, and there was no compulsion in effect that told him to get in the car. He said he was tricked. But that's why he got in the car was because they said, well, we simply want a drive back to pass the court, and that's all they wanted. But he also at that time knew that they wanted to go find and attack Norwood. The giving of a compulsion defense is just based on some evidence, David, isn't it? Yes. Pardon? Whether he's entitled to it or not. Okay. Now, is my understanding correct that by your recent remarks you're suggesting that had defense counsel requested at a trial that the threshold had been crossed by the defense for the giving of that instruction? No, because of the other problems with the issues, like I talked about, the opportunity to withdraw, especially if there could have been an objection based on lack of pretrial notice. In cases in which defense counsel— Well, leaving aside pretrial notice, just dealing with the question of the representations of the evidence presented, we're talking about the trial evidence because the conference on instructions would occur after all the evidence has been presented. So I want to make sure I understand what you're arguing. Not only, I think from what you just said, not only did Mr. Mattingly do nothing wrong, but had he, in fact, sought the compulsion defense at trial, it would not have been properly forthcoming. Right. If it had stayed in position, it would have been denied. And one of the main reasons also that I haven't mentioned yet is that compulsion is only defense to the things that are actions that are demanded by the compeller's threats. And here, the allegation was that he was told to get Norwood, but once he goes out after Norwood, and then he throws a bat and misses, and then he says he comes back to the car, he said that's not good enough. Essentially what happens is later, he gets into an altercation with Norwood, and Norwood drops a knife. Then, essentially, now here's where the lacking is. The parts are lacking for the compulsion defense. He's not compelled by the Duberys to either pick up Norwood's knife, then start running in the same direction as Norwood, a port of the oath to get away from the Duberys, which is not, because he's not running after Norwood because he's compelled, he's running in the direction of Norwood, according to the defendant, because he's trying to get away from the Duberys. And then the other thing that happens is he starts stabbing Norwood because he claims that he's trying to protect himself. So he wasn't saying that he stabbed Norwood because he was compelled, under threat of imminent bodily harm or death, to stab Norwood. So, I mean, essentially, that's why this is not a compulsion case, because what he was being told to do, like some of the other cases, like in Capron, for example. Well, I think that's an argument better addressed, for instance, if I were the trier of fact in a bench trial, and the defendant said, raise this question, why, judge, you shouldn't find compulsion present. And I think that's a pretty good argument. The state may have proved beyond a reasonable doubt that it was not, which I think would be your standard if it had been given. But that's not the standard at issue here. The question is whether there was some evidence that might have justified instructing the jury. The state's position is there was no evidence that he was being compelled at the time because he picked up the knife right after Norwood had stabbed him. He felt the sense that that's what he said. I mean, that's not any evidence of compulsion. So the earlier discussion about claim compulsion wouldn't have worked? The compulsion instructions could have been reused within the child court's discretion, and even if they had been presented, it wouldn't necessarily have been rejected by the jury. It's incredible. Or also, legally lacking the child court could have used them on the basis of opportunity to withdraw, the fact that he wasn't specifically compelled to do certain things in which he was charged. So those are the reasons why. I also want to get to the defense. With respect to prejudice, can't get past the conditions of police. I know he said he lied to the police, but when he admitted to police that he went to jump Norwood because of the areas of his favor in the town, that makes sense. In a sense, what he says at trial doesn't really make any sense. He also told police that when he lost control after Norwood took a stab at him. And so that's his explanation to the police for why he did what he did. And with respect to compulsion claims, it bears in mind that Bunning was this other person who had a car. The Barriers were perfectly fine with letting him drive home in his car and going back inside his house and going to bed and not having anything to do with their plan. So they let him have the time to participate, which certainly makes it seem odd that they were doing so much to compel this defendant to participate in the mob action. And it's also very credible that the Barriers assembled at Castle Court would have then ridden over in Bunning's car to the defendant's residence, only to ask the defendant, oh by the way, you need to drive right back to Castle Court where they already were. It just doesn't make any sense. Obviously there's several inconsistencies between what the defendant said happens versus what he told police that happens. For example, he told the police that everyone got out of the car at first when they spotted Norwood. And the defendant also told police that he proved that because he was unable to catch the victim. Just as Ben mentioned about getting back up because he wanted to chase him. Also, it's also curious that he didn't run into the Barriers after he stabbed Norwood. Instead, he went back and waited in the car. The main thing also, when they talk about the contest of credibility, is Bunning's testimony. The defendant came back home with Patrick to bury, and he was excited, and he bragged that he got him good. Essentially, that's the neutral witness there who's going to settle any credibility contest about whether the defendant's police statement or his trial testimony is correct. If he were truly compelled, he wouldn't be excited and bragging about getting Norwood. So, for these reasons, the state believes that this judgment is not necessarily erroneous, and the press reports it's wrong. Thank you, Ms. Brooks. Mr. Andrews, any rebuttal? Going first to the point that he's guilty based on accountability, I think you were correct, Justice Steinman, that a lot of this is arguments for the jury. Ms. Brooks said it's implausible that he would have gotten in the car, but he testified he was tripped into the car, they wanted a ride back, and then once they got into the car, they won't let him out. So, I mean, there is an explanation for why he's in the car with the Barriers. There's even an explanation why he's not driving. He's drunk and intoxicated on other substances. So, to say that just because he got in the car, he's automatically accountable, that's just not true. There's evidence to show, you know, if the jury accepted it, that would lead them to find that he was compelled, you know, that he voluntarily got in the car, but it wasn't to offend the Barriers, it was just to give him a ride home, or to bring his car back with Patrick, his roommate, who was driving. The state also argued there's no evidence of compulsion at the time that Mr. Norwood was stabbed by Mr. Davison, and that's just not correct. Remember what the testimony was, that Mr. Davison testified Mr. Norwood took off. Mr. Davison testified, I fled the Barriers in the same direction. In fact, the state said, you know, that's crazy, why are you going in the same direction? And Mr. Davison goes, where else could I go? You know, obviously the one direction to flee the Barriers is the one Mr. Norwood fled. So they're both fleeing in the same direction, and Mr. Davison testifies that Patrick DeBerry drives up, cuts him off with the car, hits Norwood with the bat, which causes Norwood to turn on Mr. Davison with the knife. So there is plenty of testimony that at the time Mr. Davison stabbed Mr. Norwood, he was still under compulsion by the DeBerrys because he'd been cut off from his flight. You know, I... Can you commit murder in a compulsion case if you fear bodily harm? That's an interesting question, I think. Well, I think if you can't, you've got no argument. Well, I don't know why you can't, because the statute says that it's available if you commit great bodily harm. I mean, on the theoretical level, the lesser evils and whatnot. But again, that goes more to the necessity defense rather than to the compulsion defense. The compulsion defense is very explicit, that if you fear either great bodily harm or death, then you are entitled to act. And, you know, it was certainly, you know, when he was told that he wouldn't be going home, that's evidence that he feared death. You know, one of the reasons I thought I'd argue this case is because, you know, when you get to the prejudice prong, you get to whether this could win a trial, this really is kind of a reasonable defense when you look at the evidence outside of Mr. Davison's testimony about the compulsion. You know, it was the three DeBerrys who had a grudge with Mr. Norwood because he hit one of the brothers, and they wanted to get even with him. You know, Mr. Davison, he only knew Patrick DeBerry because he was his roommate. He didn't know the other two. He didn't know Mr. Norwood. He had no grudge against Mr. Norwood at all. You know, he didn't tell the police about what happened. The police officer specifically said, you know, I can tell you, you don't want to implicate these guys, and that's because he's afraid. You know, which corroborates his testimony that he was, in fact, afraid. He won't talk to the police. You know, this just strikes me as a case where, had there been a compulsion defense presented, that it could well have won, and that's the reason I chose to argue this, and that's the reason why I'm asking this court to grant Mr. Davison a new trial. Thank you. Thank you, Mr. Andrews. We'll take this matter under advisement and deem recess.